**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **DESKTOPSITES, INC.,**<br>        **Plaintiff,**<br>**v.**<br><br>**VMWARE, INC.,**<br>        **Defendant.** | **Case No. 6:22-CV-284-ADA-DTG** |

**DEFENDANT VMWARE, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
SANCTIONS PURSUANT TO RULE 11 AND THE COURT'S INHERENT
AUTHORITY**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Rena Int'l Corp. v. Sis– Joyce Int'l Co., Ltd.*,
   2015 WL 12732433 (C.D. Cal. Dec. 14, 2015) ......................................................7

*Derzack v. Cnty. of Allegheny, Pa.*,
   173 F.R.D. 400 (W.D. Pa. 1996), *aff'd sub nom. Derzack v. Cnty. of Allegheny*
   *Children & Youth Servs.*, 118 F.3d 1575 (3d Cir. 1997) ........................................7

*N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*,
   432 F. App'x 25 (2d Cir. 2011) ............................................................................7

*Plastech Holding Corp. v. Greentech Auto. Corp.*,
   257 F. Supp. 3d 867 (E.D. Mich. 2017)..............................................................6, 7

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
   115 F.3d 644 (9th Cir. 1997) ................................................................................9

*Ramirez v. T & H Lemont, Inc.*,
   845 F.3d 772 (7th Cir. 2016) ................................................................................7

*Sarco Creek Ranch v. Greeson*,
   167 F. Supp. 3d 835 (S.D. Tex. 2016) ..................................................................3

*Secrease v. W. & S. Life Ins. Co.*,
   800 F.3d (7th Cir. 2015) .......................................................................................4

*Webastro Thermo & Comfort N. Am. v. Bestop, Inc.*,
   323 F. Supp. 3d 935 (E.D. Mich. 2018)................................................................8

## Other Authorities

Fed. R. Civ. P. 11 ........................................................................................... *passim*

L.R. 7(d)(2) .........................................................................................................10

## I.      INTRODUCTION

DesktopSites' and its counsel's misconduct in relying on falsified evidence before and after filing this lawsuit is sanctionable under Rule 11 and the Court's inherent power.  The most remarkable thing about Insigne's opposition and DesktopSites' declaration, apart from the glaring inconsistencies, is that no one takes responsibility or accountability for the admitted fraud perpetrated upon this Court and VMware.  Insigne still cannot bring itself to call the altered screenshot at the heart of its infringement allegations "doctored," a point conceded freely by DesktopSites itself.  Instead of admitting the harm and seriousness of relying on falsified evidence, Insigne continues to mislead by calling the doctored screenshot "annotated" to "demonstrate" infringement.  Insigne ignores the pattern of deception about the missing RDP limitation, including in the Complaint, and the harm of bringing a wholly frivolous lawsuit.  Instead, Insigne *still* maintains the case was based on "ample" other non-doctored evidence but keeps pointing to the same documentation it has relied on since 2020 that plainly and directly negates infringement. This continued disregard of facts is just the most recent example of the troubling pattern of conduct warranting sanctions.

The key facts regarding the sanctionable conduct here are not disputed.  A screenshot of the accused Horizon product was falsified to intentionally replace evidence of non-infringement (showing RDP used to access *remote desktops*), with fake evidence of infringement (showing RDP used to access *remote applications*). DesktopSites and Insigne relied on the doctored screenshot in March 21, 2021 pre-suit correspondence with VMware that the Complaint references as a basis for willful infringement (Dkt. 1, ¶ 20).  Moreover, DesktopSites pointed the Court to the doctored screenshot as evidence of infringement in its Opposition to VMware's motion to dismiss (Dkt. 26).

The fabrication goes to the very heart of the case.  The inconsistent declarations of Mr. Coddington and Ms. Armstrong only reinforce that sanctions are warranted.

## II.    ARGUMENT

### A.    DesktopSites' and Insigne's Accounts Regarding Reliance on the Doctored Screenshot Are Incompatible and Equally Unacceptable

DesktopSites and Insigne present inconsistent accounts of their respective conduct regarding the doctored screenshot that suggest a lack of candor to the Court. *Compare* Dkt. 52 *with* Dkt. 54.  Their competing stories cannot be rationalized, and in any event, neither demonstrates a lack of culpability.  Insigne admits it knew the doctored screenshot was altered by DesktopSites shortly after VMware filed its Motion to Dismiss—yet Insigne still cited it as "rebuttal evidence" of infringement in its opposition.  (Dkt. 26 at 2.)  DesktopSites, on the other hand, did not even file an opposition to VMware's Rule 11 motion, but did provide a declaration opposing Insigne's withdrawal as counsel that contradicts Insigne's account.  (Dkt. 54.)  Both accounts evince at minimum a reckless and unreasonable disregard for the veracity of the parties' representations to the Court, yet DesktopSites and its counsel each still maintain that they did nothing wrong.  The Court should sanction both by dismissing the case with prejudice and awarding VMware its attorneys' fees from the inception of this suit.

Mr. Coddington admits to having first learned the Horizon screenshot was altered on May 26, 2022, *before* filing DesktopSites' opposition to VMware's motion to dismiss. (Dkt. 52-1 at ¶ 6.) Even so, Mr. Coddington says he was "satisfied with DesktopSites' explanation regarding the alterations to the screenshot" (*id.* at ¶ 7) which was "modified by DesktopSites to demonstrate Horizon's relationships" to commonly used applications (Dkt. 52 at 7).  However, the nature of the alteration to the screenshot—removal of evidence of non-infringement and replacement with evidence (if true) of infringement—could never be reasonable.  Therefore, DesktopSites'

explanation was either not truthful or Insigne's "satisfaction" was unjustified.  If Insigne compared the real screenshot with the doctored version, it should have candidly admitted to the Court that it was wrong to rely on the screenshot for any purpose.  Two weeks later, on June 9, *with knowledge that the screenshot had been altered,* Insigne and DesktopSites *still* pointed the Court to the doctored screenshot as supposed evidence of infringement in opposition to VMware's motion to dismiss. Rather than clarifying that the screenshot had been altered to demonstrate infringement, DesktopSites and Insigne instead wrongly argued to the Court that VMware's complaints about the doctored screenshot were "misguided and simply false." (Dkt. 26 at 5).  *See Sarco Creek Ranch v. Greeson,* 167 F. Supp. 3d 835, 852 (S.D. Tex. 2016) (granting sanctions for reliance on "doctored images as evidence" where what plaintiff characterized as "re-creations" "were not denoted as such and passed off to the Court and opposing counsel as copies of originals").

Ms. Armstrong of DesktopSites tells a different story. She says Mr. Coddington did not contact her about the doctored screenshot until June 17, 2022, *after* VMware filed its *reply* brief, and that between June 17 and June 20, she "provided clarification, explanation, and elaboration to Counsel regarding such doctored screenshots."  (Dkt. 54 at ¶¶ 2-3.)  If Ms. Armstrong's version of events is true, then Mr. Coddington did not even investigate the doctored screenshot when he became aware of it on May 26.  The inconsistencies between DesktopSites and Insigne are troubling to say the least, as either scenario demonstrates sanctionable misconduct.  If Mr. Coddington investigated the screenshot and learned from his client that it was falsified but continued to rely on it in response to the Motion to Dismiss, Insigne violated Rule 11.  If Mr. Coddington did not investigate the screenshot until after briefing on the Motion to Dismiss was complete, he failed to investigate a very serious allegation of wrongdoing and did not uphold his duty of candor to this Court.

If that were not enough, Mr. Coddington goes on to say that "upon further investigation" of the doctored screenshot after VMware served its Rule 11 motion on July 12, 2022, he identified a conflict that forced Insigne to withdraw.  (Dkt. 52-1 at ¶ 8.)  He does not explain why Insigne could not have performed this "further investigation" in May, after receiving VMware's Motion to Dismiss.  And Ms. Armstrong's declaration does not mention any further investigation by Insigne after June 20, when she purportedly finished providing Mr. Coddington information about the doctored screenshot.  Instead, she says she was not even contacted about VMware's motion for sanctions until July 27, at which point "Counsel provided assurance to Plaintiff that Counsel was comfortable arguing that our position was reasonable."  (Dkt. 54 at ¶ 5.)  Just five days later, on August 1, Ms. Armstrong describes being notified by Insigne that Insigne would be disengaging because "their firm could not risk their reputation in advancing the case any further."  (Dkt. 54 at ¶ 7.)  Mr. Coddington and Ms. Armstrong present irreconcilable timelines that cannot both be true, and neither account can show that they made an adequate investigation of or an adequate response to VMware's presentation of the doctored screenshot and the true facts underlying DesktopSites' infringement claims.

Insigne takes no responsibility whatsoever, despite Mr. Coddington admitting he learned the screenshot was altered *before* relying on it in opposition to VMware's motion to dismiss. Insigne points the finger at DesktopSites as the one who "modified" the screenshot and at a third party, Tangible IP, who purportedly "vouched for the evidence's credibility." (Dkt. 52 at 5.)  Ms. Armstrong admits clarifying, explaining, and elaborating on the doctored screenshot to Insigne, but no such explanation has been provided to VMware or the Court.[1]  What is not in dispute,

---

[1] The Court should also order Insigne and DesktopSites to produce emails and correspondence between DesktopSites, Insigne, and Tangible IP for *in camera* review.

however, is that DesktopSites and Insigne knowingly relied on fabricated evidence to support their infringement claims. "Falsifying evidence to secure a court victory undermines the most basic foundations of our judicial system." *Secrease v. W. & S. Life Ins. Co.,* 800 F.3d 397, 402 (7th Cir. 2015). The conflicting declarations with irreconcilable inconsistencies only reinforce that sanctions are both warranted and necessary.

**B.      Despite All Evidence Clearly and Consistently Showing Non-Infringement of the RDP Limitation, Including Documents Cited in the Complaint, Insigne *Still* Incorrectly Maintains There Was a Reasonable Basis for Suit**

DesktopSites fabricated the Horizon screenshot to try and make a claim for infringement that it knew it could not make absent the fabrication. It had to fabricate the screenshot because the way the Horizon software operates, described in its product documentation, shows that Horizon does not support using RDP to access remote applications. But Insigne continues to insist there was a reasonable basis to bring suit, again citing the same documents it relied on before that ***expressly negate infringement on their face.*** Insigne does not even bother to address the pattern of misconduct on the missing RDP limitation, including the false and misleading allegations about RDP in the Complaint, set forth in Sections II.E.2-3 and IV.B of VMware's motion for sanctions. (Mot. at 7-11, 15-17.)

Insigne misrepresents even now the documents cited in the Complaint, claiming they contain "ample legitimate evidence" of infringement when they do not. Specifically, Insigne points to the Complaint at ¶¶ 15, 18, 20, and 22-26 and the claim charts attached at Docs. 1-4, 1-5 and 1-6. Of these, no evidence or allegations about RDP are referenced in ¶¶ 15, 18, and 20. And the claim charts have a collection of screenshots, but the only references to "RDP" are incorrect and were ***added*** by DesktopSites as an "annotation," with no attribution of source or citation to evidence, because no such evidence exists. (*See* Mot. at 7.) Paragraph 22 of the complaint cites a document referencing "Microsoft RDP" that states *"**Microsoft RDP is a supported display***

5

protocol for remote desktops…. (Only the **PCoIP** display protocol **and** the **VMware Blast** display protocol **are supported for published applications.)**" (See Motion, Ex. 6, Dkt. 45-6, emphasis added.) Paragraph 24 points to the document describing application farms that says **"RDP applies to desktop pools only**. **The display protocol for application pools is always VMware Blast or PCoIP.**" (Dkt. 1 at ¶ 24, emphasis added). VMware identified all these issues in its May 2021 response, which underscores why DesktopSites and Insigne were unreasonable to maintain these allegations in the Complaint.

That Insigne has the audacity to point to evidence of *non-infringement* to argue a reasonable basis for this case without even addressing VMware's briefing on these exact points weighs in favor of sanctions rather than against them. Insigne had so little confidence in this "ample legitimate evidence" that it preemptively dismissed the case without even consulting its client, then scrambled to withdraw as counsel and privately told its client "their firm could not risk their reputation in advancing the case any further." (Dkt. 54 at ¶ 7.) Insigne's panicked response to the sanctions motion is at odds with its rhetoric now.

### C. Insigne applies the wrong legal standard, ignoring cases based on fabricated evidence and fraud on the Court

Claiming ignorance, Insigne's brief largely ignores the basis of VMware's motion: fabricated evidence and fraud on the Court. It addresses none of the facts or cases related to reliance on fabricated evidence or fraud on the Court. It ignores the broader pattern of deception around the missing RDP limitation in the Complaint and Motion to Dismiss Opposition set forth in detail in VMware's opening Rule 11 brief. Instead, Insigne parrots a vanilla Rule 11 analysis regarding whether there was a good faith basis for the Complaint. Insigne argues sanctions are only appropriate if the Complaint and Opposition were not based on a reasonable investigation and a good faith basis, independent of the doctored screenshot. These arguments completely miss

6

the mark.  Here, DesktopSites filed a knowingly frivolous action, based on VMware's detailed refutation of DesktopSites' infringement theory a year before.  That itself is sanctionable under Rule 11, but DesktopSites' continued reliance on faked evidence is further proof of sanctionable bad faith conduct.

Courts routinely hold that fabricated evidence is a fraud on the Court warranting the most severe sanctions.  *See e.g., Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 874 (E.D. Mich. 2017); *see also* Mot.at 13-15.  Insigne wants relief from culpability because it supposedly did not ***need*** to rely on the doctored screenshot in its Opposition (even though it chose to, knowing its falsity), claiming "ample" non-doctored evidence.  Fraud is not so easily remedied.  And as already explained in detail, non-doctored evidence of Horizon's use of RDP to access remote applications does not exist. Horizon documentation, including those cited in DesktopSites' Complaint, clearly and consistently show that RDP is only supported to access remote desktops, not remote applications as would be needed to prove infringement.

### D. Insigne's claim that it had no pre-suit knowledge of the doctored screenshot is belied by the parties' pre-suit correspondence that it repeatedly ignored

Insigne claims not to have known the screenshot was doctored "until VMware's Motion to Dismiss was filed on May 26, 2022" and that it was not involved in its creation.  (Dkt. 52-1 at ¶ 6.)  In distancing itself from an analysis based on falsified evidence, Insigne resorts to a perfunctory recitation of steps that it claims shows a reasonable investigation and Rule 11 basis for the Complaint and Opposition. This compartmentalization fails to address any relevant issues concerning affirmative misconduct. More importantly, Insigne's tack is incoherent given that Insigne ***admits*** filing the Opposition relying on the doctored screenshot ***after*** Mr. Coddington learned it had been altered.

As such, Insigne's conduct falls squarely within the cases addressing fraud on the Court, not some more benign standard divorced from this egregious act. *See Plastech*, 257 F. Supp. 3d at 874 (citing *Ramirez v. T&H Lemont, Inc.,* 845 F.3d 772, 782 (7th Cir. 2016), petition for cert. filed, No. 16–1418 (U.S. May 30, 2017) ("[F]alsifying evidence to secure a court victory" constitutes a fraud on the court because it "undermines the most basic foundations of our judicial system."); *N. Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25 (2d Cir. 2011) ("Falsifying evidence is sanctionable conduct. Submitting falsified evidence is also properly sanctionable."); *Derzack v. Cnty. of Allegheny, Pa.,* 173 F.R.D. 400, 412–413 (W.D. Pa. 1996) (collecting cases and holding that evidence fabrication constitutes a fraud upon on the court), *aff'd sub nom*. *Derzack v. Cnty. of Allegheny Children & Youth Servs.,* 118 F.3d 1575 (3d Cir. 1997); *Am. Rena Int'l Corp. v. Sis– Joyce Int'l Co., Ltd.,* No. CV 12-6972, 2015 WL 12732433, at *23 (C.D. Cal. Dec. 14, 2015) ("[I]t is well-settled that fabricating and submitting knowingly false evidence amounts to willful and bad faith conduct.")).

### E.   Insigne was on notice of the doctored screenshot before suit was filed, triggering a duty to further investigate

Insigne's argument that it did not know the screenshot was doctored until VMware's motion to dismiss is belied by the parties' pre-suit correspondence.  VMware pointed Insigne and DesktopSites to specific, verifiable information that refuted infringement of the RDP limitation and the existence of the functionality the doctored screenshot depicts—including in other documentation they were relying on.  In its May 2021 pre-suit response, VMware specifically called out the page of Insigne's March 2021 letter attaching the doctored screenshot and reiterated that RDP was not supported for remote applications:

> "Page 4 of your analysis somehow attempts to illustrate otherwise by asserting that '[u]sers can connect to published applications (i.e. Word 2016) via… Microsoft RDP.' ***This simply does not reflect the true capabilities of the Horizon product.*** Again, as we clearly

> stated in our previous letter, the Horizon product does not support the RDP protocol for use with remote (published) applications."
> Mot., Ex. 10 at 1.

Insigne's opposition is silent on what it did in response to VMware's May 2021 letter putting it on notice that the screenshot was not an accurate reflection of Horizon's capabilities.

Insigne not only "fail[ed] to undertake the most basic investigation of the underlying facts" before filing suit, but also repeatedly disregarded contrary evidence, conjured up factually unsupported theories, and manufactured evidence. *Webastro Thermo & Comfort N. Am. v. Bestop, Inc.*, 323 F. Supp. 3d 935, 942 (E.D. Mich. 2018). Even if the Court were to take everything Insigne stated at face value, Insigne's conduct warrants Rule 11 sanctions because it was, at a bare minimum, highly reckless. *Primus Auto. Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir. 1997) ("A finding of bad faith is warranted where an attorney ***knowingly or recklessly*** raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent.") (quotation marks and citation omitted).

### F.   Insigne's argument that Rule 11 does not apply to the March 2021 pre-suit correspondence is a strawman argument that ignores the facts

Insigne turns a blind eye to the import of its March 2021 pre-suit correspondence to the sanctions motion here.  First, as discussed above, DesktopSites and Insigne relied on the doctored screenshot in multiple filed pleadings governed by Rule 11.  Rule 11 applies to any pleading, written motion, or other paper "***whether by signing, filing, submitting, or later advocating it***…" Fed. R. Civ. Proc. 11.  DesktopSites adopted the doctored screenshot as evidence of infringement in its opposition brief that was signed, filed, and submitted.  Rule 11 plainly applies.

Moreover, the reason the March 2021 pre-suit letter was attached to VMware's motion to dismiss in the first place is because DesktopSites specifically referenced that letter in its Complaint as "rebutting VMware's non-infringement position" and as a factual basis for its claim of willful

infringement.  Dkt. 1 at ¶¶ 20, 36.  By putting the March 2021 letter at issue in its Complaint, DesktopSites explicitly adopted and underscored the letter's relevance to the case.

Finally, reliance on the doctored screenshot to show infringement in pre-suit correspondence and Insigne's failure to investigate VMware's response strongly suggests that DesktopSites knew its infringement claim was unfounded and lacked evidentiary support.  If one could reasonably believe the Horizon software infringed, there would be no need to alter a screenshot to make RDP appear applicable to remote applications rather than just remote desktops. The doctoring was not an attempt to "annotate" an infringement position. It required deliberate concealment of unmistakable proof of non-infringement. It is impossible for Insigne and DesktopSites not to recognize that the "alteration" was an egregious act of deception.  Nonetheless, Insigne continues to minimize the misconduct by maintaining the screenshot was merely "annotated." (Opp. at 1, n.2.)  Insigne's inability to comprehend the seriousness of the misconduct, both pre- and post-suit, calls for sanctions to deter future misconduct.

## III.   CONCLUSION

VMware respectfully requests that the Court grant its motion for sanctions pursuant to Rule 11 and this Court's inherent authority and (1) dismiss DesktopSites' Complaint with prejudice; (2) award VMware its attorneys' fees since inception of the case and hold DesktopSites and Insigne jointly and severally responsible for payment; and (3) order any other sanctions or relief that this Court deems appropriate.  Because DesktopSites failed to submit a response to VMware's motion for sanctions, VMware respectfully requests that the Court grant the motion with respect to DesktopSites as unopposed pursuant to Local Rule 7(d)(2).

Dated: September 13, 2022

Respectfully submitted,

**WINSTON & STRAWN LLP**

/s/ *Kelly C. Hunsaker*
Kelly C. Hunsaker
Admitted *pro hac vice*
Khunsaker@winston.com
Michael R. Rueckheim
TX State Bar No. 24081129
MRueckheim@winston.com
Yarden Kakon
YKakon@winston.com
Admitted *pro hac vice*
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, CA 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6559

Barry K. Shelton
TX State Bar No. 24055029
BShelton@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

Vivek V. Krishnan
Admitted *pro hac vice*
VKrishnan@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Juan Yaquian
Admitted *pro hac vice*
JYaquian@winston.com
WINSTON & STRAWN LLP
800 Capital St., Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

**ATTORNEYS FOR DEFENDANT
VMWARE, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of September 2022 a true and correct copy of Defendant VMware, Inc.'s Reply in Support of Motion For Sanctions was electronically filed with the Clerk of the Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means. Pursuant to Local Rule CV-5(a), I hereby certify that all counsel of record have been served copies of the documents.

_/s/ Barry K. Shelton_
Barry K. Shelton